# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATURAL RESOURCES DEFENSE
COUNCIL, INC.,

     *Plaintiff*,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

     *Defendant.*

Civil Action No. 17-1243 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

The Natural Resources Defense Council, Inc. ("NRDC") brings this action against the
Environmental Protection Agency ("EPA") under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et. seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et. seq.*
The NRDC's amended complaint asserts three causes of action: The first alleges that the EPA
violated FOIA by failing to respond to the NRDC's FOIA request seeking (1) records about the
EPA's website-retention policies and (2) records instructing EPA staff to remove specific
material from the EPA website. The second and third causes of action, in contrast, challenge the
EPA's policy or practice of threatening to treat a FOIA request as "voluntarily withdrawn" if the
EPA concludes that the request does not reasonably describe the records sought and the requester
does not respond to an email from the EPA within ten days. *See* Dkt. 11 at 1–2 (Am. Compl.
¶¶ 1, 4–5). The second cause of action raises that challenge under FOIA itself, and the third
raises the challenge under the APA. The EPA has now released records responsive to the FOIA
request to the NRDC's satisfaction, Dkt. 28 at 2, leaving only the second and third causes of
action for resolution.

The parties' cross-motions for summary judgment are currently before the Court. Dkt. 15; Dkt. 20. For the reasons explained below, the Court first concludes that the NRDC has Article III standing to bring its policy or practice claim. Neither party, however, has addressed whether the NRDC's alleged injury is sufficient to sustain this Court's statutory jurisdiction under FOIA to grant injunctive relief and, if so, whether the alleged injury is sufficient to support entry of the injunction that the NRDC seeks. The Court will, accordingly, deny the EPA's motion for summary judgment with respect to the NRDC's Article III standing, and will deny both the EPA's motion to dismiss for failure to state a claim and the NRDC's cross-motion for summary judgment on the merits without prejudice.

## I. BACKGROUND

### A. Factual and Procedural History

The NRDC alleges that, shortly after President Trump took office, numerous agencies—including the EPA—"began purging information about important public health and environmental issues from their websites." Dkt. 11 at 1 (Am. Compl. ¶ 2). To obtain information about this activity, the NRDC submitted a FOIA request to the EPA seeking:

1. All records setting forth general policy or guidance for EPA staff to apply when determining whether to remove information, documents, or webpages from an EPA website.

2. All records from January 20, 2017 through the present instructing EPA staff within the Office of Public Affairs to remove specific information, documents, or webpages from any EPA website.

Dkt. 20-4 at 18 ("Website Request"). The EPA did not respond to the request for nearly three months. Dkt. 11 at 2 (Am. Compl. ¶¶ 3–4). Finally, on June 14, 2017, the EPA sent the NRDC an email stating that the request was "not a proper FOIA request" because it did not "reasonably describe the records sought as required by both the FOIA statute and the [EPA's] regulations."

Dkt. 20-4 at 31. The email further explained that, "[i]n order for [the EPA] to process your request, you should 'include specific information about each record sought, such as the date, title or name, author, recipient, subject matter," and that, "[i]f known, you should include any file designations or descriptions for the records that you want." *Id.*

The email then observed that, "following the 2017 Presidential inauguration, the agency received numerous FOIA requests regarding historic versions of the EPA website" and that, "[t]o respond to these requests for information, [the] EPA ha[d] reposted a snapshot of the EPA website as it existed on January 19, 2017." *Id.* In the passage at the core of the present dispute, the EPA added:

> The information provided in the January 19, 2017 Web Snapshot may provide the information you seek. If it does not, please reply back to me within 10 days of the date of this correspondence so that we may assist in clarifying [the Website Request] as a proper request. *If we do not hear back from you by that date, we will consider your request voluntarily withdrawn.*

*Id.* (emphasis added).

Nine days later, the NRDC replied to the EPA's June 14, 2017 email, making three points. First, it disagreed with the EPA's conclusion that the Website Request failed reasonably to describe the records sought and was thus "'not a proper FOIA request.'" *Id.* at 34 (quoting EPA June 14, 2017 email). The NRDC observed that FOIA does not require "that a requester identify the date, title, author, recipient, and subject matter of records requested" and that when, as here, the FOIA requester lacks that information, "it is incumbent upon the agency to determine who within the agency might possess the necessary information to design and to conduct a reasonable search." *Id.* (citing S. Rep. No. 93-854, at 162 (1974)). Second, the NRDC explained that the EPA's January 19, 2017 snapshot of its website was not responsive to the NRDC's FOIA request, which sought guidelines and instructions regarding the removal of

material posted on the EPA's website.  *Id.*  Third, the NRDC declined "to 'voluntarily withdraw' its request."  *Id.*  The NRDC asserted that "there is no basis under FOIA for [the] EPA to deem a request 'voluntarily withdrawn' based on non-response to an [email], particularly on an arbitrarily short ten-calendar-day deadline," nor can an agency "use FOIA's 'reasonably describes' requirement 'to obstruct public access to agency records.'"  *Id.* (quoting S. Rep. No. 93-854, at 162)).

The NRDC filed the present suit three days later, on June 26, 2017, seeking to compel the EPA to disclose all nonexempt responsive records.  Dkt. 1 at 5 (Compl. ¶¶ 23–27).  It amended its complaint on August 9, 2017, adding challenges under FOIA and the APA to the EPA's policy or practice of threatening to deem FOIA requests "voluntarily withdrawn" based on a requester's failure to respond to an email within ten days.  Dkt. 11 at 10–11 (Am. Compl. ¶¶ 47–51).  Meanwhile, also on August 9, 2017, the EPA sent the NDRC another email, updating it on the EPA's "search for records responsive to its FOIA request."  Dkt. 20-4 at 38.  With respect to the NRDC's request for "records setting general policy or guidance for EPA staff to apply when determining whether to remove information, documents, or webpages from an EPA website," the EPA directed the NRDC to three online links to the relevant policies.  *Id.*  And, with respect to the NRDC's request for "records from January 20, 2017 through the present instructing EPA staff within the Office of Public Affairs to remove specific information, documents, or webpages from any EPA website," the EPA "interpreted th[e] request" to seek "any email or other written instruction or communication instructing relevant individuals within the Office of Environmental Information or the Office of Public Affairs to remove" the information at issue.  *Id.*  The email further indicated that the agency had identified "10 management level individuals" who might

have responsive records, along with relevant search terms, the number of items retrieved, and one possible way to narrow the request. *Id.*

On October 4, the NRDC and the EPA filed a joint stipulation setting a schedule for the EPA to produce nonexempt records responsive to the Website Request, *see* Dkt. 14 (Joint Stip. & Prop. Order), which this Court subsequently approved, *see* Dkt. 17. The parties then notified the Court on May 23, 2018 that the EPA had released records responsive to the Website Request and that the NRDC did "not intend to challenge the adequacy of [the] EPA's disclosures." Dkt. 28 at 1. As a result, "[t]he parties . . . agree[d] that further proceedings on the merits of Count [One] are unnecessary." *Id.* at 2.

The NRDC, however, continues to challenge the EPA's policy or practice of threatening to deem FOIA requests as "voluntarily withdrawn" if (1) the agency concludes on an initial review that the request does not "reasonably describe" the records sought and so notifies the requester, and (2) the requester fails to contact the EPA within ten days regarding the asserted deficiency in the request. According to the NRDC, "[c]ounting the Website Request, [the] EPA has levied this threat against at least six NRDC FOIA requests since April 2016," and "[n]umerous other individuals and groups have received nearly identical respond-or-else ultimatums from various EPA officials during that time." Dkt. 20-1 at 12; *see also* Dkt. 20-2 at 4–8 (Pl.'s Statement Undisputed Material Facts ("PSUMF") ¶¶ 15–31); Dkt. 20-4 (Knicley Decl. Exs. F, I–W). The NRDC seeks a declaration that the EPA's practice of threatening to treat a FOIA request as "voluntarily withdrawn" unless the requester contacts the agency within ten days violates FOIA, and it seeks an injunction barring the EPA from continuing to engage in that practice. The EPA, for its part, does not dispute that it engages in this practice but contends that the NRDC lacks standing to challenge it and that, even if the NRDC has Article III standing, the

practice constitutes a lawful exercise of the EPA's discretion to implement FOIA in a reasonable manner.

The EPA's motion to dismiss or, in the alternative, for summary judgment and the NRDC's cross-motion for summary judgment are currently before the Court.

## II. LEGAL STANDARD

The EPA seeks summary judgment on the ground that the NRDC lacks standing to bring its policy or practice claims and, alternatively, if the Court concludes that the NRDC has standing, it moves to dismiss Counts Two and Three for failure to state a claim. The NRDC disagrees with both arguments and cross-moves for summary judgment on its FOIA challenge to the EPA's practice of sending FOIA requesters emails threatening to treat their requests as "voluntarily withdrawn" if the requester does not respond to the EPA within ten days.

A motion for summary judgment assesses whether the moving party is entitled to prevail in light of the undisputed facts. The moving party is entitled to summary judgment under Rule 56 if she can "show[] that there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it could affect the substantive outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court, moreover, must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *See Liberty Lobby,* 477 U.S. at 255.

If the moving party carries its initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. That is, once the moving party carries its initial burden on summary judgment, the nonmoving party must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment. *Liberty Lobby*, 477 U.S. at 249–50.

A motion to dismiss under Rule 12(b)(6), in contrast, "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. ANALYSIS

The Court starts, as it must, with jurisdiction—in particular, the NRDC's standing to challenge the EPA's practice of threatening to treat FOIA requests as "voluntarily withdrawn" if the requester does not respond within ten days of receiving notice from the EPA that the request does not reasonably describe the records sought. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (citation omitted)). As explained below, the Court concludes that the NRDC has identified an injury-in-fact that it is likely to suffer in the future in the absence of relief, although that injury is, even by the NRDC's own measure, a "modest" one. Dkt. 20-1 at 21. The parties, however, fail to address whether that injury—or any other injury that the NRDC is likely to suffer absent judicial relief—is sufficient to sustain this Court's *statutory* jurisdiction under FOIA to grant injunctive relief and whether it is sufficient to support issuance of the injunction that the NRDC seeks. The Court will, accordingly, deny the EPA's motion for summary judgment with respect to the NRDC's Article III standing, and will deny both the EPA's motion to dismiss for failure to state a claim and the NRDC's cross-motion for summary judgment on the merits without prejudice.

### A.     Article III Standing

"When an association . . . seeks to establish standing, it may proceed in one of two ways: it may show that the association has 'organizational standing' to sue on its own behalf, or it may demonstrate that it has 'associational standing' to sue on behalf of its members." *Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 168 (D.D.C. 2018). Here, the NRDC relies on the former theory. "There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and

immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

The NRDC "bears the burden of establishing the three elements that make up the 'irreducible constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In challenging the NRDC's standing, the EPA focuses on the first element: injury-in-fact. That focus makes sense. As both parties recognize, if the injury that the NRDC asserts constitutes an injury-in-fact, there is little doubt that it is caused by the challenged practice and that an injunction barring the EPA from continuing that practice would redress the harm. The dispositive question, accordingly, is whether compelling the NRDC to respond to a request for clarification within ten days, on pain of "voluntary withdrawal" of its FOIA request and the attendant uncertainty that comes with that, is sufficient to satisfy the injury-in-fact requirement.

To establish that it has suffered an injury-in-fact, the NRDC must identify "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal citations and quotations omitted). But because the NRDC seeks injunctive relief—here, an order enjoining the EPA from continuing its "voluntary withdrawal" practice—past harm will not suffice. *See Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros.,* 317 F.3d 334, 336 (D.C. Cir. 2003). Rather, the NRDC must demonstrate "some present or imminent injury" to establish their standing to seek injunctive relief. *Id.* The likelihood of future injury, moreover, cannot be merely speculative or hypothetical. *See Nat'l Res. Def. Council v. Pena,* 147 F.3d 1012, 1022 (D.C. Cir.

1998).  It must be real, palpable, and imminent.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015).

The question whether the NRDC is likely to sustain a cognizable future injury must be assessed in light of the relevant statutory and regulatory framework.  *See Lujan*, 504 U.S. at 560 (standing requires "invasion of a legally protected interest").  All agree, to start, that a FOIA request must "reasonably describe[]" the records sought, 5 U.S.C. § 552(a)(3)(A), and that, under the EPA's FOIA regulations, "[i]f [the agency] determines that [a] request does not reasonably describe the records, it [must] tell [the requester] what additional information [the requester] need[s] to provide or why [the] request is otherwise insufficient," 40 C.F.R. § 2.102(c).  The regulations further assert that the EPA will provide requesters with "an opportunity to discuss and [to] modify [their] request[s] to meet the" reasonably-describes requirement.  *Id.*  All also agree that, if a request ultimately fails to reasonably describe the records sought, the agency may reject the request on that ground.  *See* Dkt. 20-1 at 27; Dkt. 15 at 11–12.

FOIA also sets time limits for an agency to respond to a FOIA request and to release nonexempt, responsive records.  Upon receiving a FOIA request "made under" 5 U.S.C. § 552(a)(1), (2) or (3), an agency must "determine within 20 days (except Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request and [must] immediately notify the person making [the] request of such determination and the reasons therefor," and of "the right . . . to appeal to the head of the agency" any adverse determination.  5 U.S.C. § 552(a)(6)(A).  If the agency determines that it should comply with the request, the records sought must "be made promptly available to" the requester.  *Id.* § 552(a)(6)(C)(i).  If, on the other hand, the agency concludes that it needs additional information to process the request, it

may make "one request" for that information, and the 20-day clock is tolled while the agency "is awaiting such information that it has reasonably requested from the requester." *Id.* § 552(a)(6)(A)(ii)(I). The EPA FOIA regulations, likewise, provide that the 20-day clock is tolled while a requester "revise[s]" its description of "the records" it is seeking. 40 C.F.R. § 2.102(c).

One decision from this district goes a step further and holds that the 20-day clock does not even begin to run until the requester submits a request that reasonably describes the records sought. *See Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 280 (D.D.C. 2012). That holding gives effect to the introductory clause of § 552(a)(6)(A), which triggers the 20-day period "upon a request for records made under paragraph . . . (3) of . . . subsection [552(a)]" of FOIA, which in turn requires a request that "reasonably describes" the records sought. But, if construed in this manner, it is unclear what work the tolling provision would perform; because § 552(a)(3) not only requires that the request "reasonably describe" the records sought, but also requires compliance "with published rules stating the time, place, fees (if any), and procedures to be followed" in seeking agency records, it is difficult to imagine what request for additional "information" might trigger the tolling provision if the clock does not even begin to run until the requester has fully complied with § 552(a)(3). For purposes of resolving the EPA's challenge to the NRDC's Article III standing, however, the Court need not decide whether a FOIA request that fails to reasonably describe the records sought merely permits tolling while the ambiguity is resolved or does not even trigger the 20-day clock.[1]

---

[1] Moreover, because the EPA does not dispute that the filing of a FOIA request triggers the 20-day clock unless tolled pursuant to § 552(a)(6)(A), the Court need not reach this issue for the purposes of resolving the EPA's motion to dismiss for failure to state a claim.

In light of this statutory framework, the parties agree that agencies like the EPA are entitled to obtain clarification of requests that do not "reasonably describe" the records sought and that the 20-day clock does not run while the agency does so.  As a result, the delay stemming from any such request for clarification is not the focus of the NRDC's argument.  Rather, according to the NRDC, it meets the test for injury-in-fact because the EPA's "voluntary withdrawal" practice presents the organization with a "Hobson's choice," *id.* at 20:  On the one hand, if it "does not respond" to the EPA within ten days, "it will not get the records it has requested and" will need "to resubmit its request or seek to challenge the 'voluntary withdrawal.'"  *Id.* at 19.  On the other hand, if it acts promptly "to protect its FOIA request," it will be required to "divert time and resources to respond to [the] EPA within the agency's extrastatutory ten-day deadline."  *Id.* at 20.  In support of this theory of standing, the NRDC's Chief Counsel attests that "the burden of responding to [the] EPA's request for clarification may be modest in terms of staff hours spent, [but] it is not immaterial."  Dkt. 20-3 at 3 (Bernard Decl. ¶ 10).  "The responsible NRDC staff member must first evaluate [the] EPA's often-conclusory claim that clarification is necessary," and, "[i]f she concludes that the request needs or could benefit from clarification, she must then determine how to do so."  *Id.*  "[A]ll of this," moreover, "must be completed within the short time frame [the] EPA provides, on pain of a 'voluntary'— but not truly voluntary—withdrawal of the request."  *Id.*  According to the NRDC's Chief Counsel, "[t]he lack of clarity as to what it means for a request to be 'voluntarily withdrawn'" means that the NRDC will "almost always" take this second route and will comply with the EPA's deadline rather than risk "voluntary withdrawal."  Dkt. 20-3 at 3–4 (Bernard Decl. ¶¶ 9, 11).

Importantly, the NRDC does not argue that the EPA's requests for clarification unlawfully delay the agency's issuance of determination letters or the release of responsive records. To be sure, the NRDC posits—with some basis—that the EPA's determination that the Website Request did not reasonably describe the records sought was wrong, and, indeed, it contends that the EPA's invocation of the reasonably-describes requirement is "baseless" in "many, if not most, cases." Dkt. 20-1 at 23 n.7. But it also acknowledges that it has not pressed that issue here and that whether the EPA is engaged in a practice of abusing "the 'reasonably describes' standard is an issue for another case." Dkt. 27 at 8 n.4. Similarly, although the NRDC might plausibly contend that, by waiting almost two months before even seeking clarification regarding the Website Request, the EPA ran afoul of FOIA's 20-day clock; tolling, if applicable, requires a "request . . . for information," which in this case did not come until after 20 days had passed. 5 U.S.C. § 552(a)(6)(a)(ii)(I). Again, however, that is not the practice that the NRDC challenges in this action and is not the injury that it invokes in support of its claim of standing. Finally, as noted above, the NRDC does not contend that it has suffered or will continue to suffer an "injury from the fact that [the] EPA—as required under FOIA in appropriate circumstances . . .—reaches out for clarification." Dkt. 27 at 8.

Rather, the injury that the NRDC invokes is the EPA's "mandate for urgency," Dkt. 20-3 at 4 (Bernard Decl. ¶ 11), imposed by its "chosen administrative process, which demands a response within ten days on threat of 'voluntary withdrawal,'" Dkt. 27 at 9. According to the NRDC, "even if [the] EPA threatened to deny a request—rather than deem it 'voluntarily withdrawn'—a ten calendar-day deadline for clarification would still violate FOIA." Dkt. 20-1 at 30. And the combination of that threat, along with the "lack of clarity as to what rights [the] NRDC would have if [the] EPA ultimately deemed an NRDC FOIA request 'voluntarily

withdrawn'" instead of denying it, has forced, and will continued to force, the "NRDC to divert time and resources to respond to [the] EPA emails within the [unreasonably short] time allotted." Dkt. 20-2 at 9 (PSUMF ¶¶ 39–40). In other words, the NRDC contends that the EPA's threat to treat a FOIA request as "voluntarily withdrawn" if the NRDC does not rapidly reply to the EPA's inquiry affects how the NRDC allocates its time and resources.

The EPA responds that "[t]he only 'pressure' applied to [the NRDC]" by the challenged practice is "to make a simple telephone call" or otherwise to contact the EPA "and [to] have [an exchange] about its request." Dkt. 25 at 2–3. Although the NRDC has the right to file FOIA requests as "it sees fit," the EPA continues, "it should then expect, in accordance with the [a]gency's regulations, that the [a]gency will contact [the NRDC] to request further clarification, and that [the NRDC] may need to devote some amount of time and resources to assisting the [a]gency in locating the records [the NRDC] seeks," presumably on whatever schedule the agency dictates. *Id*. at 3–4. That contention assumes the EPA is right on the merits. "For purposes of analyzing [the NRDC's] standing," however, the Court must "make the requisite assumption that [the NRDC] would prevail on the merits of [its] claim that" the EPA has unlawfully required a response in ten days, on pain of "voluntary withdrawal." *Estate of Boyland v. U.S. Dep't of Agriculture*, 913 F.3d 117, 123 (D.C. Cir. 2019).

Understood through that prism, the Court concludes that the NRDC has satisfied Article III's injury-in-fact requirement. The "crux" of the NRDC's alleged injury is "the burden of diverting resources to meet [the] EPA's deadlines." Dkt. 20-1 at 21. And, with respect to that asserted injury, it has offered evidence that (1) it has responded more quickly than it would have done otherwise because of the ten-day requirement, and (2) this unreasonably short timeline has

caused it to reallocate its time and recourses, diverting attention to what it might otherwise treat as more urgent matters. *See id.* at 21–23.

As the NRDC acknowledges, this burden is a "modest" one. *Id* at 21. But Article III standing does not demand more, particularly where, as here, the plaintiff is the object of the challenged administrative action. *See Grocery Mfgs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) (citing *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)). As the Supreme Court explained in *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973):

> The Government urges us to limit standing to those who have been "significantly" affected by agency action. But, even if we could begin to define what such a test would mean, we think it fundamentally misconceived. "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation even though small from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, . . . a $5 fine and costs, . . . and a $1.50 poll tax. . . .

*Id.* at 689 n.14 (internal citations omitted). In other words, "an identifiable trifle is enough for standing." *Id.* (citation omitted). *See also Bob Jones Univ. v. United States*, 461 U.S. 574, 581–82 (1983) (noting that Bob Jones University sued for a tax refund of $21.00); *Chevron Nat. Gas v. FERC*, 199 F. App'x 2, 4 (D.C. Cir. 2006) (finding injury sufficient to sustain Article III standing where plaintiff faced "even . . . rather insignificant burdens"). The requirement that the NRDC reallocate its resources to respond to the EPA on a timeline that the NRDC contends is unreasonably short satisfies this standard.[2]

_____

[2] This showing is sufficient to establish standing to challenge the 10-day requirement. It is less clear that it would be sufficient to establish standing to bring a stand-alone challenge to the EPA's practice of deeming certain FOIA requests as "voluntarily withdrawn." The NRDC's asserted injury is, at least on the present record, based almost entirely on the EPA's timeline, as

Finally, because the NRDC is seeking prospective relief, it must—having cleared the initial hurdle of showing that it has been injured in the past by the EPA's policy—make a "showing of [a] real or immediate threat that [it] will be wronged again" by that practice in order to make out a case or controversy under Article III. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Dearth v. Holder,* 641 F.3d 499, 501 (D.C. Cir. 2011). Because the case is currently before the Court on summary judgment, *see Lujan*, 504 U.S. at 561 (plaintiff's burden of establishing standing varies with the stage of the proceeding), the NRDC bears the burden of offering evidence "that [it] . . . 'is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct," *Lyons*, 461 U.S. at 102; *see also Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) ("[W]here a plaintiff 'seeks prospective . . . injunctive relief, he must establish an ongoing or future injury that is '*certainly impending*;' he may not rest on past injury.'" (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (emphasis added))). The NRDC has met that burden.

The NRDC asserts that it "currently has dozens of FOIA requests pending before [the] EPA, several of which do not identify specific titles, dates, authors, or recipients for the requested records." Dkt 20-1 at 22; *see also* Dkt. 20-3 at 2, 4–5 (Bernard Decl. ¶¶ 6, 12–14). These pending requests, along with NRDC's intent to continue filing similar requests, *see* Dkt. 20-3 at 5 (Bernard Decl. ¶ 16), establish a sufficient likelihood of future injury for the NRDC to challenge the EPA's practice. *See, e.g.*, *Tipograph v. Dep't of Justice*, 146 F. Supp. 3d 169, 176 (D.D.C. 2015) ("One way for a plaintiff to make this showing is to 'demonstrate that [it has]

---

opposed to the actual consequences of failing to meet that timeline. *See* Dkt. 20-3 at 3 (Bernard Decl. ¶ 9). In other words, the only concrete injury that the NRDC proffers is the reallocation of resources caused by the timeline. It does not, for example, contend that the EPA has ever had reason to deem one of the NRDC's FOIA requests as "voluntarily withdrawn" or that the NRDC intends to risk "voluntary withdrawal" by not responding.

*pending* FOIA requests that are likely to implicate the policy or practice.'" (alterations in original) (quoting *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93 (D.D.C. 2013))); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d at 262 ("[W]here a FOIA requester challenges an alleged ongoing policy or practice and can demonstrate that it has pending claims that are likely to implicate that policy or practice, future injury is satisfied.").

**B.    Statutory Jurisdiction and Injunctive Relief**

Although the NRDC has offered sufficient basis to clear the hurdle of Article III standing, the Court is unpersuaded, at least on the current record, that it has shown enough to establish *statutory* standing or to obtain injunctive or similar relief.  Because neither party has addressed either of these essential issues, however, the Court will deny both the EPA's motion to dismiss for failure to state a claim and the NRDC's cross-motion for summary judgment without prejudice and will allow both parties to renew their motions, as appropriate.

FOIA confers "jurisdiction" on federal district courts "to enjoin . . . agenc[ies] from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  "[A]s the [Supreme] Court [has] made clear," however, "Congress did not intend that language 'to limit the inherent powers of an equity court' in FOIA cases."  *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1242 (2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974)).  As a result, courts in this Circuit have enjoined an array of FOIA practices that impair the plaintiff's prompt access to agency records.  Most recently, for example, the D.C. Circuit held that a FOIA requester stated a policy or practice claim for injunctive relief based on an agency's repeated failure to comply with FOIA's time limit for producing requested nonexempt records.  *See Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 895 F.3d 770

(D.C. Cir. 2018). Other decisions have recognized that district courts may, at times, enjoin agencies from continuing to violate FOIA by unlawfully withholding nonexempt agency records. *See*, *e.g.*, *Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988); *Citizens for Responsibility and Ethics in Wash.*, 846 F.3d at 1243. And still other decisions have ordered agencies to produce *Vaughn* indexes, *see Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973), and to conduct supplemental searches for responsive records, *see Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007).

According to the NRDC, *Payne Enterprises* and its progeny stand for the proposition that a plaintiff is entitled to a policy or practice injunction if it can demonstrate that (1) the agency is engaged in an ongoing "failure to abide by the terms of the FOIA" and (2) that practice will cause the plaintiff to suffer an ongoing injury. Dkt. 20-1 at 17–18 (quoting *Payne Enters., Inc.*, 837 F.2d at 491). Although that articulation of the standard finds some support in an oft-quoted passage from *Payne*, it reads the decision out of context and substitutes an injury sufficient to support Article III standing for an injury sufficient to support an injunction under FOIA. It is not at all clear, however, that *Payne*-style relief is warranted to remedy the type of injury NRDC asserts here—that is, the organization's need to prioritize responding to a request for clarification over other work.

As an initial matter, the D.C. Circuit cases considering FOIA policy or practice claims have all involved an agency practice that impaired or frustrated the plaintiff's prompt access to nonexempt agency records.[3] The injury that each injunction or order sought to remedy was an

---

[3] Although the NRDC cites district court cases in support of its contention that the Court may exercise jurisdiction over claims seeking to "'remedy[] procedural violations' connected to an agency's processing of FOIA requests," Dkt. 20-1 at 36 (quoting *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d at 263–66), it does not explain why the exercise of statutory jurisdiction would

agency's failure to release nonexempt records in a timely manner. Although not authorized in express terms by 5 U.S.C. § 552(a)(4)(B), each injunction or order served the same ultimate goal as that statutory provision: the timely production of nonexempt records as "a means for citizens to know 'what their Government is up to.'" *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171–72 (2004) (citation omitted). Most recently, in *Judicial Watch*, the D.C. Circuit recognized this focus, explaining that to bring a policy or practice claim under *Payne*, a plaintiff "must allege a [policy or practice] amounting to a persistent failure to adhere to FOIA's requirements and that [this practice] will interfere with its right under FOIA *to promptly obtain non-exempt records from the agency in the future*." *Judicial Watch, Inc.*, 895 F.3d at 780 (emphasis added).

Here, in contrast, the NRDC has not offered evidence that the EPA's "voluntarily withdrawn" practice has, or is likely to, delay or deny the NRDC access to the records that it has sought or will seek. To be sure, unreasonable demands for clarification might be designed to do so—but, as noted above, the NRDC has not brought such a challenge here and, indeed, it concedes that the "EPA's abuse" of this standard "is another issue for another case." Dkt. 27 at 8 n.4. It is also possible that the EPA's treatment of a FOIA request as "voluntarily withdrawn" might otherwise frustrate a requester's efforts to obtain prompt access to records and to challenge

---

be proper. In addition, unlike the NRDC's asserted claim, two of the cases it cites concerned an agency policy or practice "fundamentally connected to . . . disclosure" of documents. *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 76 (D.D.C. 2016); *see also Feinman v. FBI*, 713 F. Supp. 2d 70, 75–78 (D.D.C. 2010). In another case that arguably concerns a merely "procedural" policy or practice, moreover, the district court emphasized that "[t]he scope of the equitable powers available under the FOIA is nevertheless still unclear because the D.C. Circuit has yet to specify the breadth of *Payne*-style relief." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 265; *but see Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011) (noting that, in *Payne*, "the alleged pattern of violating FOIA related specifically to the plaintiff's record requests").

an unlawful denial of access. Here, the EPA is unclear about the consequences a requester would face if her request was deemed "voluntarily withdrawn." At different points, the agency suggests that a "voluntary withdrawal" would, like an adverse determination, be subject to administrative appeal, *see* Dkt. 25 at 5–6 n.4; that a requester subject to "voluntary withdrawal" could immediately seek redress in federal court if an agency misses the twenty-day response deadline,[4] *see id*. at 6 n.5; and that the agency will not always enforce its "voluntary withdrawal" practice, *see* Dkt. 15 at 10. This confusion could work to dissuade requesters—"particularly less experienced requesters"—from pursuing their FOIA requests, from filing administrative appeals, or from filing suit. *See* Dkt. 20-1 at 27. But the NRDC is a sophisticated requester, and it does not allege that it has been denied prompt access to EPA records or denied the right to appeal or to challenge the withholding of records as a result of the practice. In short, unlike every policy or practice case that the D.C. Circuit has considered to date, the NRDC does not seek relief relating to the improper withholding or delay in releasing agency records.

Second, the D.C. Circuit has recognized that neither § 552(a)(4)(b) nor the "inherent powers of an equity court," *Renegotiation Bd*., 415 U.S. at 20, provide district courts with statutory jurisdiction or authority to enjoin *all* practices that violate FOIA. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash.*, 846 F.3d at 1242 ("Although broad, courts' remedial authority under section 552(a)(4)(B) is not boundless."). Most notably, in *Kennecott Utah Copper Corporation v. United States Department of the Interior*, 88 F.3d 1191 (D.C. Cir. 1996), the D.C. Circuit considered a claim that the Department of the Interior had failed to comply with FOIA's

---

[4] As NRDC points out, Dkt. 27 at 10, this position is arguably in conflict with D.C. Circuit precedent. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61–65 (D.C. Cir. 1990) (holding that a FOIA requester must appeal a denial administratively, even if the statutory response deadline had passed).

requirement that agencies "currently publish" substantive rules in the Federal Register. *Id.* at

1202. Without questioning the plaintiff's Article III standing, the Court of Appeals held that

"§ 552(a)(4)(B) does not authorize district courts to order publication of such documents." *Id.*

The court explained its decision as follows:

> While it might seem strange for Congress to command agencies to "currently
> publish" or "promptly publish" documents, without in the same statute providing
> courts with power to order publication, we think that is exactly what Congress
> intended. Section 552(a)(4)(B) authorizes district courts to order the
> "production" of agency documents, not "publication." The question, then, is
> whether Congress intended "production" to include "publication." The
> dictionary does not resolve the matter . . . We think it significant, however, that
> § 554(a)(4)(A) is aimed at relieving the injury suffered by the individual
> complainant, not by the general public.

*Id.* at 1202–03. The facts and question presented in *Kennecott Utah Copper Corp.* are, of course,

entirely different from those at issue here. But the decision does demonstrate that the words of

§ 552(a)(4)(A) matter, and that the district courts do not have equitable power to enjoin any

violation of FOIA without regard for any statutory grant of authority.

Finally, the NRDC fails to distinguish the injury required to support Article III standing

from the type of injury required to support a policy or practice injunction. Even accepting the

NRDC's contention that the inherent powers of a court of equity are not moored by

§ 552(a)(4)(A) or by a need to remedy an agency's failure promptly to release nonexempt agency

records, equity itself requires far more than Article III standing to support an injunctive decree.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction

must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange*,

*LLC*, 547 U.S. 388, 391 (2006). Those factors include proof that the plaintiff will suffer an

irreparable injury, that it lacks an adequate remedy at law, that the balance of hardships tip in

favor of injunctive relief, and "that the public interest would not be disserved by a permanent

injunction." *Id.* Irreparable injury, in turn, requires more than the "identifiable trifle" sufficient to sustain Article III standing. To the contrary, in the words of the D.C. Circuit, the "injury must be both certain and great." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (1985). Although that standard "does not readily lend itself to definition," *id.*, the NRDC has failed to offer any argument or evidence that would support the issuance an injunction on the facts of this case.

The NRDC may have answers to some, or all, of these concerns. It may decide to rely instead on its APA claim and its request for declaratory relief, neither of which it has pressed to date. But until the parties have had the opportunity to address these questions—including the questions whether the Court has statutory jurisdiction to entertain the NRDC's policy or practice claim and whether injunctive or similar relief is appropriate in these circumstances—the Court cannot resolve this case.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, Dkt. 15, is hereby **DENIED,** and Defendant's motion to dismiss, Dkt. 15, and Plaintiff's cross-motion for summary judgment, Dkt. 20, are hereby **DENIED** without prejudice.



/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date: April 19, 2019